**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **TG--2006 Holdings, LLC,**<br>Plaintiff,<br>v.<br>**Microsoft Corporation,**<br>Defendant. | Case No. 6:24-cv-00065-RP<br>Patent Case<br>Jury Trial Demanded |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1. Plaintiff TG--2006 Holdings, LLC ("Plaintiff"), through its attorneys, complains of Microsoft Corporation ("Defendant"), and alleges the following:

## PARTIES

2. Plaintiff TG--2006 Holdings, LLC is a corporation organized and existing under the laws of Texas that maintains its principal place of business at 111 Congress Avenue, Suite 500 Austin Texas 78701.

3. Defendant Microsoft Corporation is a corporation organized and existing under the laws of Washington that maintains an established place of business at 1 Microsoft Way Redmond 98052-8300 WA.

## JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

## VENUE

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District. In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district.

## PATENTS-IN-SUIT

8. Plaintiff is the assignee of all right, title and interest in United States Patent Nos. 8,583,514; and 9,454,741 (the "Patents-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patents-in-Suit by Defendant.

## THE '514 PATENT

9. The '514 Patent is entitled "System and method for tracking information in a business environment," and issued 2013-11-12. The application leading to the '514 Patent was filed on 2004-08-13. A true and correct copy of the '514 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

## THE '741 PATENT

10. The '741 Patent is entitled "System and method for tracking information in a business environment," and issued 2016-09-27. The application leading to the '741 Patent was

filed on 2013-11-12. A true and correct copy of the ’741 Patent is attached hereto as Exhibit 2 and incorporated herein by reference.

## TECHNICAL BACKGROUND OF THE ’514 AND ’741 PATENTS

11. Prior to the inventions of the ’514 and ’741 Patents, tracking business information was using prior art methods and software was “time consuming and confusing.” ’514 Patent, 1:14.

12. Conventional user interfaces and methods of displaying information of the prior art lacked failed to present information “in a visually clear and meaningful way,” particularly where a “number of interdependent tasks” is involved.” ’514 Patent, 1:18; *id.* at 10:13-14.

13. For example, prior art user interfaces and methods did not display clear real-time visual alerts for time-critical tasks across multiple business processes simultaneously, did not offer an efficient way to navigate through complex hierarchical business data while displaying critical alerts to the user, did not associate time triggers with various tasks, and did not automatically update visual representations based on these triggers.

14. These deficiencies of the prior art hindered the ability of users to efficiently recognize and address time-critical problems in real-time, and led to users becoming bogged down in inefficiently navigating their user interface.

15. To address these deficiencies of the prior art, the ’514 and ’741 Patents provided an unconventional and inventive user interface and methods for tracking and displaying data to the user.

16. For example, displaying selected data with visual alerts according to the methods claimed by the ’514 and ’741 Patents “allows system users to have every production tree view

collapsed, and yet still be alerted to the fact that there is trouble with a single IHP." '514 Patent, 3:58-60.

17. In one embodiment, "the child folder and the parent folder turn red to indicate to the user that a problem has occurred." '514 Patent, 4:10-11.

18. Once alerted to the problem, a "user can click down through the folders to find the root cause of the problem and then correct the problem before it affects a dependent process." '514 Patent, 3:60-63.

19. Thus, the unconventional and inventive user interface and methods of tracking and displaying claimed in the '514 and '741 Patents improved the real-time problem management capability of the user, helping users to prevent small issues from escalating into larger problems.

20. Moreover, the speed of the user's navigation was also enhanced by this approach, since a user could quickly access the relevant parent and child file folders to find the root cause of a problem, rather than accessing disparate folders unaware of the true location of the problem as in the prior art. This unconventional and inventive approach allowed the user to see the most relevant status without first opening the contents of the folders, improving the efficiency of using the device and user interface.

21. The unconventional and inventive user interface and methods of tracking and displaying claimed in the '514 and '741 Patents enabled other significant new efficiencies. For example, since "using this method allows system users to have every production tree view collapsed, and yet still be alerted to the fact that there is trouble with a single IHP," the user's device need not constantly render detailed information for all items, reducing the processing load and memory usage on the device. '514 Patent, 3:58-60.

22. The unconventional and inventive improved user interface and methods of tracking and displaying claimed in the ’514 and ’741 Patents also used visual attributes, such as color changes, to indicate changes in state. For example, the “alert will typically comprise a change in the color, size, animation, or other visual attribute of the folder.” ’514 Patent, 3:51-53. In this example, “both the child folder and the parent folder turn red to indicate to the user that a problem has occurred.” *Id*. at 4:10-11. This unconventional and inventive approach required fewer full screen refreshes compared to systems that might need to redrew entire sections of the interface, reducing GPU load and power consumption.

23. These, among other inventive concepts, are captured in the limitation of Claim 1 of the ’514 Patent, requiring “changing an attribute of the parent folder based upon the state of the child element and its contents when time triggers are met prior to clearance by an operator.” This alerts the user to a potential problem (e.g., an unfinished task) by changing an attribute of the parent folder, which can be quickly and efficiently noted by the user, who can then access the relevant parent folder to examine its child element.

24. Likewise, the foregoing inventive concepts, among others, are captured in the limitations of Claim 1 of the ’741 Patent requiring “changing the color of the child folder when system time equals or exceeds the first alert interval” and “changing the color of the parent folder when the child folder changes color. These alert the user to a potential problem (e.g., an unfinished task) by changing an attribute of the child folder, followed by its child folder in turn, which can be quickly and efficiently noted by the user, who can then access the relevant parent folder and child folder to address the issue.

25. The inventive and unconventional methods of tracking and displaying information claimed in the ’514 and ’741 Patents are not and cannot be performed in the human mind.

26. The inventive and unconventional methods of tracking and displaying information claimed in the ’514 and ’741 Patents are not conventional business practices, but are specific technical innovations.

### COUNT 1: INFRINGEMENT OF THE ’514 PATENT

27. Plaintiff incorporates the above paragraphs herein by reference.

28. **Direct Infringement**. Defendant has been and continues to directly infringe one or more claims of the ’514 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count below (among the “Exemplary Defendant Products”) that infringe at least the exemplary claims of the ’514 Patent also identified in the charts incorporated into this Count below (the “Exemplary ’514 Patent Claims”) literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringe the claims of the ’514 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers. On information and belief, Defendant carries out its infringing activities in the United States.

29. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary ’514 Patent Claims, by having its employees internally test and use these Exemplary Products.

30. **Actual Knowledge of Infringement**. The service of the original Complaint filed on February 1, 2024, and this Amended Complaint, in conjunction with the attached claim charts and references cited, constitutes actual knowledge of infringement as alleged here.

31. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the ’514 Patent. On

information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '514 Patent. See Exhibit 3 (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

32. **Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '514 Patent, literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the '514 Patent.

33. Exhibit 3 includes charts comparing the Exemplary '514 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the '514 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary '514 Patent Claims.

34. Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 3.

35. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## COUNT 2: INFRINGEMENT OF THE '741 PATENT

36. Plaintiff incorporates the above paragraphs herein by reference.

37. **Direct Infringement**. Defendant has been and continues to directly infringe one or more claims of the '741 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the

charts incorporated into this Count below (among the "Exemplary Defendant Products") that infringe at least the exemplary claims of the '741 Patent also identified in the charts incorporated into this Count below (the "Exemplary '741 Patent Claims") literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringe the claims of the '741 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers. On information and belief, Defendant carries out its infringing activities in the United States.

38. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '741 Patent Claims, by having its employees internally test and use these Exemplary Products.

39. **Actual Knowledge of Infringement**. The service of this Complaint, in conjunction with the attached claim charts and references cited, constitutes actual knowledge of infringement as alleged here.

40. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '741 Patent. On information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '741 Patent. See Exhibit 4 (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

41. **Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '741 Patent, literally or by the doctrine of equivalents, by selling

Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the ’741 Patent.

42. Exhibit 4 includes charts comparing the Exemplary ’741 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the ’741 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary ’741 Patent Claims.

43. Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 4.

44. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## JURY DEMAND

45. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A judgment that the ’514 Patent is valid and enforceable

B. A judgment that Defendant has infringed directly and indirectly one or more claims of the ’514 Patent;

C. A judgment that the ’741 Patent is valid and enforceable

D. A judgment that Defendant has infringed directly and indirectly one or more claims of the ’741 Patent;

E. An accounting of all damages not presented at trial;

F. A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the ’514; and ’741 Patents, including pre- or post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

G. And, if necessary, to adequately compensate Plaintiff for Defendant's infringement, an accounting:

i. that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys fees against Defendant that it incurs in prosecuting this action;

ii. that Plaintiff be awarded costs, and expenses that it incurs in prosecuting this action; and

iii. that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

Dated: September 3, 2024

Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com

**Counsel for Plaintiff
TG--2006 Holdings, LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on September 3, 2024, via the Court's CM/ECF system.

*/s/ Isaac Rabicoff*
Isaac Rabicoff